STATE OF MINNESOTA v. CANNON RIVER MANUFACTURERS' ASSO-CIATION.[1]

December 24, 1896.

Nos. 10,309—(45).

Corporation—Dissolution.

> *Held,* that the order and judgment of the trial court were justified by the findings of fact.

Appeal by defendant from a judgment of the district court for Rice county, entered in pursuance of the findings and order of Buckham, J. Affirmed.

*Geo. N. Baxter,* for appellant.

*H. W. Childs,* Attorney General, and *Geo. B. Edgerton,* for respondent.

BUCK, J. This action was brought on behalf of the state of Minnesota, by its attorney general, for the purpose of having the defendant corporation restrained from exercising any of its corporate privileges, and to have it dissolved and its affairs wound up, and for the appointment of a receiver. The grounds for such relief are stated in the complaint. The court found that the allegations in the first 10 folios of the complaint were true. These allegations are as follows:

"(1) That the Cannon River Manufacturers' Association is a corporation duly organized and existing under and pursuant to the laws of said state. (2) That by an act of the legislature of the said state, entitled 'An act to aid the Cannon River Improvement Company in the construction of slackwater navigation on the Cannon river, from thence by way of Lake Elysian to the Minnesota river, at Mankato,' approved March 2, 1865, the said state granted unto the Cannon River Improvement Company, a corporation theretofore duly organized and existing under and pursuant to the laws of the said state, for the pur-

[1] Reported in 69 N. W. 621.

pose of aiding the said last-named company in the construction of slackwater navigation on the Cannon river in said state, and from thence by way of Lake Elysian, to the Minnesota river, near Mankato, all the swamp lands belonging to said state lying and being in the odd-numbered sections within the St. Peter land district, as the said district was then constituted, and not otherwise appropriated, to an amount not to exceed three hundred thousand (300,000) acres. That the said Cannon River Improvement Company was organized for the purpose of constructing canals, locks, dams, towpaths, and, generally, for the purpose of constructing slackwater navigation from the Mississippi river, via the Cannon river, to the lakes connected therewith, thence via Lake Elysian to the Minnesota river, near Mankato; but that, by an act of said legislature, entitled 'An act in relation to the Cannon River Improvement Company,' approved February 28, 1872, the said Cannon River Improvement Company was authorized and empowered to amend and alter its articles of incorporation, so as to make it a purpose and object of said corporation, in addition to the rights and purposes theretofore enjoyed, to construct and operate a railroad, under and pursuant to the General Laws of the said state, from the Mississippi river, via the valley of the Cannon river, along the route in said last-named act described, and granted and extended to the said Cannon River Improvement Company, for the purpose of constructing the said railroad, the right to have, use, and enjoy all and singular the moneys, capital stock, subscriptions, property, and rights of every nature and kind, acquired or pledged for the purpose of the construction of the said canal and slackwater navigation and works connected therewith, and upon substantially the same conditions, so far as the same could be made conformable to the change of public improvement contemplated by the said last-named act. That, in pursuance of the said last-named act, the said Cannon River Improvement Company did thereafter amend and alter its said articles of incorporation, so as to make it a purpose and object of said corporation, in addition to the rights and purposes theretofore enjoyed by it, to construct and operate a railroad, under title 1 of chapter 34 of the General Statutes of said state, from the Mississippi river, via the valley of the Cannon river, along the route aforesaid; and that the amendments and alterations of the said articles were duly filed and recorded in the office of the secretary of state of said state. (3) That, pursuant to an act of the legislature of the said state entitled 'An act to amend section 2 of chapter 67 of the Special Laws of 1865, as amended by chapter 118 of the Special Laws of 1870, relating to the Cannon River Improvement Company,' approved February 27, 1875, it was provided, among other things, that in case the said Cannon River Improvement Company should elect to apply the grant made in the act first hereinbefore named to the building of a railroad as authorized by chapter 111 of the Special Laws of 1872, at least one-twelfth of said grant should be selected pro rata, and set apart for the purpose of developing and improving the water powers and manufacturing resources of the Cannon river, which said lands so selected and

set apart should never be diverted from the said last-named object, and that whenever a corporation of the proprietors of the mills of said Cannon river should be formed for that purpose the lands thus selected and set apart should be transferred by the said Cannon River Improvement Company to the corporation composed of the said proprietors, to be used and applied under its direction as in said last-named act provided."

The court further found: That, pursuant to the terms of the various acts under which the defendant became entitled to its land grant, it has selected, and the governor of the state has conveyed to it, in the aggregate, 24,181.45 acres; and that said corporation has disposed of the same, and received therefor the sum of $41,723; and that it is entitled to receive, under the terms of its said grant, an additional amount of 818.55 acres.

"That the defendant corporation was originally composed of proprietors of various mills, located on Cannon river, who were largely interested in the development of its water powers, and had a direct pecuniary interest in the judicious expenditure of the proceeds of said grant for such purpose; and that during the earlier years of the existence of such corporation, and while such interest continued, its members expended the moneys that came into their hands according to their best judgment in carrying out the purposes designed in the grant; and that such expenditures, where actually put into such improvements, were made judiciously, and in such a manner as to produce good results, and according to the true intent of the grant. That the defendant has become entangled in much and expensive litigation, involving the expenditure of over six thousand dollars of its funds in this direction; but I find that such litigation was more the misfortune of the defendant than the fault of its management, and that the same has been to a large extent incurred in defending and enforcing its legal rights. That the defendant, though receiving and disbursing large sums of money, has never kept books of account, and has none but very crude records of such receipts and disbursements; and that the management of its affairs has been largely in the hands and under the control of one or two of its members. That during the latter years of the existence of the defendant corporation most of its members had ceased to own any mill property on said Cannon river, or to have any pecuniary interest in the development of its water powers; and that, previous to the commencement of this action, all such members had sold and conveyed away all their interest in the mills on said river in which they were formerly interested; and that no one of them is now the owner of, or in any manner interested in, any mill power on said stream. That all the members of defendant corporation have ceased to have any interest in the management of its affairs, or any concern for the best use of its remaining funds to complete the improvements for which they were granted, or in any further improvement of the wa-

ter powers of Cannon river; and that the moneys due such corporation, and the proceeds of a judicious sale of its remaining lands, would, if wisely expended, largely supplement the work already done, and greatly improve such water powers, and benefit the present owners, who have succeeded to the rights therein of the original proprietors, the members of the defendant corporation.    That the amount of funds which the defendant is likely to receive, applicable to the purposes of its trust, and exclusive of the additional land to which it is entitled, will depend very much on the outcome of the litigation in which it is engaged; but that the same will probably amount to several thousand dollars."

Upon the facts, the court found, as a conclusion of law, that the plaintiff is entitled to have the defendant corporation dissolved, and its affairs wound up, and a receiver appointed to take charge of its property and effects and apply the same to the purpose for which such corporation was organized.

Only errors of law are assigned, viz. that the decision and judgment entered therein are contrary to law.    The application is one for the appointment of a receiver, and not a case where the merits of the controversy have been determined, and a final trial had, and therefore we have set forth the facts found by the trial court quite fully, to show the grounds upon which the order was made appointing a receiver.    We are of the opinion that the undisputed facts bring the case within that of State v. Park & Nelson Lumber Co., 58 Minn. 330, 59 N. W. 1048, and that the action is authorized by G. S. 1894, § 359, which in part reads as follows, in reference to the duties of the attorney general, viz.:

"If it comes to his knowledge that any incorporated company has offended against the laws of the state, misused, surrendered, abandoned or forfeited its corporate authority or any of its franchises or privileges, he shall cause proceedings to be instituted against it."

Upon the case as presented, an extended discussion of the facts and law applicable thereto is not necessary.    Judgment affirmed.

CANTY, J.    I concur, on the ground that the defendant has failed for so long a time to complete the work for which it was created that the state is, through its attorney general, justified in winding defendant up.